[Cite as *State v. Price*, 2020-Ohio-132.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J<br>Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |

STATE OF OHIO

    Plaintiff-Appellee

-vs-


TONY A. PRICE

    Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J
Hon. William B. Hoffman, J.
Hon. Patricia A. Delaney, J.

Case Nos. 2019 CA 00019 &
      2019 CA 00020


O P I N IO N


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Delaware Municipal Court, Case Nos. 18CRB02332 & 18CRB02358 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 15, 2020 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| NATALIA S. HARRIS<br>Delaware City Prosecutor<br>70 North Union Street<br>Delaware, Ohio 43015 | DOMINIC L. MANGO<br>Mango Law Office<br>43 S. Franklin Street<br>Delaware, Ohio 43015 |

*Hoffman, J.*

{¶1}   Appellant Tony A. Price appeals the judgment entered by the Delaware Municipal Court convicting him of assault (R.C. 2903.13(A)), domestic violence (R.C. 2919.25(A)), and intimidation of a crime victim or witness (R.C. 2921.04(A)), and sentencing him to 45 days incarceration and 1095 days of community control.  Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On August 24, 2018, M.H. called 911 to report Appellant, her boyfriend and the father of her child, assaulted her.  M.H. told police she and Appellant argued over Appellant's drinking, and she poured out his vodka.  Appellant slapped her a few times in the face and threw her against the wall, causing her to bend her hand.  She also told police Appellant briefly choked her.

{¶3}   Appellant was arrested and charged with assault, domestic violence, endangering children, and disorderly conduct (Del. Muni. Case No. 18CRB02332, App. No. 19 CAC 03 0019).

{¶4}   While incarcerated on the pending charges, Appellant telephoned M.H. from jail.  During the call, which was recorded, he told her repeatedly she needed to call the police and tell them they have the wrong guy.  M.H. expressed concerned she would be charged with a crime for lying to police.  Appellant told her things would go downhill if he remained in jail.  She reminded Appellant he had slapped and choked her, and he gets aggressive when he drinks.  Appellant told M.H. his job would be gone if she didn't call and tell police they had the wrong guy, he'd be back at his mom's house, and she would be by herself.  Appellant told her the extra money he is trying to make for them would go down the drain for no reason, and she had to do the right thing for their family.  When she

continued to express concern she would be charged criminally for lying to police, Appellant told M.H. to say she was mad, emotional, or pregnant, and the charges against her would still be smaller than the charges he was facing. Appellant said paying a fine would dig them further into the hole for no reason, when he would be with her after the fact anyway. Appellant told M.H. if she still loved him, she had to figure out a way to get him out of jail. Appellant stated if M.H. didn't call police and tell them she lied, she might as well be single because he was going to be useless.

{¶5} During the call, Appellant asked someone to check on what M.H's charges would be for lying to police, and reported to her it would be a misdemeanor charge of the second degree for obstructing official business. He told M.H. the fine would be up to $800, and probably they would divert her away from the fine, but in any event the fine would not be nearly as bad as what was about to happen to him. They then discussed how they would get $800. Appellant gave her the name of the officer who brought him in so she could "reach out to him, if you decide to." Tr. (recorded call) 22. She again expressed concern she would go to jail. Appellant gave her the officer's name and told M.H. she could call the officer and tell him they have the wrong guy. Then Appellant would get out of jail, continue to live with her, and pay rent.

{¶6} Finally, M.H. told Appellant, "All right. I lied to the cops or I would say – I would mainly say that I lied to a cop." Tr. 25. Appellant told her she wouldn't go to jail for sure, and he would be able to pay off one small charge quicker than he would be able to pay off multiple charges for no reason. M.H. contacted the Delaware Police Department on August 25, 2018, and expressed a desire to drop the charges against Appellant because she had overreacted. She subsequently appeared in court in response to her

first subpoena, but thereafter sent a notarized letter to Appellant's counsel stating her desire the charges be dropped because she had overreacted and exaggerated, and did not want to make any further court appearances.   On August 29, 2018, Appellant was charged with intimidation of a crime witness or victim for the telephone call (Del. Muni. Case No. 18CRB02358, App. No. 19 CAC 03 0020).

{¶7}   Prior to trial, the state of Ohio filed a motion seeking to invoke the forfeiture by wrongdoing exception pursuant to Evid. R. 804(B)(6), to admit into evidence the recording of the telephone call.  After an evidentiary hearing, the trial court granted the State's motion, finding the evidence admissible.

{¶8}   The case proceeded to jury trial in the Delaware Municipal Court.  The jury returned verdicts of guilty on the charges of assault, domestic violence, and intimidation. The jury returned a verdict of not guilty on the child endangering charge, and the court entered an acquittal on the disorderly conduct charge.  The trial court sentenced Appellant to 45 days incarceration, and 1095 days of community control.

{¶9}   It is from the February 4, 2019 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:


I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND AN ABUSE OF DISCRETION WHEN IT ALLOWED OTHERWISE INADMISSIBLE HEARSAY TESTIMONY UNDER THE FORFEITURE BY WRONGDOING EXCEPTION IN EVID. R. 804(B)(6) IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I, SECTION 10.

II. THE APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN HIS CONVICTION FOR INTIMIDATION OF A CRIME VICTIM OR WITNESS.

I.

**{¶10}** In his first assignment of error, Appellant argues admission of the recording of the telephone call between Appellant and M.H. violated his right to confront witnesses against him and further violated Evid. R. 804(B)(6).

**{¶11}** Forfeiture by wrongdoing has long been recognized as an equitable exception to a defendant's constitutional right to confront the witnesses against him. *See Giles v. California*, 554 U.S. 353, 366, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008); *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878). Ohio codified this doctrine in 2001 as a hearsay exception under Evid.R. 804(B)(6), which provides:

(B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(6) Forfeiture by Wrongdoing. A statement offered against a party if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying. However, a statement is not admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the

statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement.

**{¶12}** To admit statements under this exception, a prosecutor must show by a preponderance of the evidence: (1) the defendant engaged in wrongdoing which caused the witness to be unavailable, and (2) one purpose for the wrongdoing was to make the witness unavailable to testify. *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 106; *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84. The State need only show the defendant's wrongdoing which caused the witness's unavailability "was motivated in part by a desire to silence the witness." *Hand*, *supra*, at ¶¶ 84, 90.

**{¶13}** Our standard of review of evidentiary rulings implicating the Confrontation Clause is de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97 (2016), *citing United States v. Henderson,* 626 F.3d 326, 333 (6th Cir.2010).

**{¶14}** Appellant argues the State did not prove the element of "wrongdoing" by a preponderance of the evidence. While the rule does not define "wrongdoing," the 2001 staff notes state the "wrongdoing" need not constitute a criminal act.

**{¶15}** The trial court found Appellant committed wrongdoing to silence the witness in the instant case by allaying her concerns about what charges she could face if she lied, by stressing the financial consequences she would suffer if he had no job, and by reinforcing she would be single and doing things on her own if she didn't change her story. Tr. 152-53. The court found Appellant's purpose in the call was to convince M.H. it would be easier if she did not testify against him. Tr. 154.

{¶16} We agree with the finding of the trial court Appellant's conduct constituted "wrongdoing." Despite M.H.'s concerns about facing an obstruction of justice charge, Appellant persistently told her the small fine for the charge would be much easier than the charges he was facing, and further if he was out of jail he could work and help pay off the charge. He repeatedly reminded her of the financial consequences she would suffer if he was in jail, unable to contribute to rent and their family finances. He also reminded her she would be single if he was in jail. By the end of the telephone conversation, M.H. appeared to be considering his suggestion she tell the police she exaggerated or overreacted, and the next day she did in fact go to the police to state she wanted to drop the charges. Although she did appear for one court hearing, she later sent counsel a letter stating she did not want to go to court again, and wanted the charges dropped because she overreacted and exaggerated, which was what Appellant suggested she tell the authorities happened.

{¶17} We find the preponderance of the evidence demonstrated Appellant committed wrongdoing in the telephone conversation by pressuring M.H. to change her story or face dire consequences, which caused her to be unavailable for trial, and further his wrongdoing in the conversation was motivated at least in part by a desire to prevent her from testifying.

{¶18} We find the trial court did not err in finding the evidence admissible pursuant to Evid. R. 804(B)(6).

{¶19} Forfeiture by wrongdoing is an exception to Appellant's right to confront the witness against him. *Giles, supra.* Because the trial court did not err in finding forfeiture

by wrongdoing in the instant case, we find admission of the recorded telephone call did not violate the Confrontation Clause.

{¶20} We further find admission of the phone call did not violate Appellant's right to confront the witness against him because the evidence was not testimonial in nature. The Confrontation Clause does not bar the admission of hearsay statements which are not testimonial. *Davis v. Washington*, 547 U.S. 813, 823, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21. Although it has not defined "testimonial," in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*,* the U.S. Supreme Court stated generally the core class of statements implicated by the Confrontation Clause includes statements "made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." *Id.* at 52. The Court found at a minimum, testimonial evidence includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and statements made during police interrogations. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 144, *citing Crawford* at 68.

{¶21} Many courts have concluded phone calls placed from prison between co-defendants are not testimonial. *United States v. Thurman,* 915 F.Supp.2d 836, 854–55 (W. D. Ky. 2013). *See also, State v. Dennison,* 10th Dist. No. 12AP–718, 2013–Ohio–5535, ¶ 64; *Saechaeo v. Oregon,* 249 Fed.App'x 678, 679 (9th Cir. 2007); *Malone v. Kramer,* E.D. Cal. No. 1:07–cv–00743 AWS SMS(HC) (Apr. 6, 2010) (involving jail phone conversations between accused and his wife); *Ibarra v. McDonald,* N.D. Calif. No. C10–01145 JW (PR) (Apr. 26, 2011).  The focus is not on whether there is an awareness the

conversation is being recorded, but whether there is an intent to bear testimony. *State v. Toney*, 7th Dist. Mahoning No. 14 MA 0083, 2016-Ohio-3296, ¶ 52.

**{¶22}** In the instant case, we find the statements made by M.H. were not made under circumstances where an intent to bear testimony against Appellant was present. While Appellant reminded her frequently the conversation was being recorded, the conversation does not reflect M.H. had an intent to bear testimony against Appellant for use at a later trial.

**{¶23}** Finally, Appellant argues the court erred in excluding the notarized letter M.H. sent to his lawyer's office from evidence at the hearing on December 17, 2018, concerning application of Evid. R. 804(B)(6). The court stated on the record at trial, "It is clear that, frankly, even if I admitted this document as a piece of evidence in my consideration on the forfeiture by wrongdoing decision, this wouldn't change my decision in the least." Tr. 158. We find Appellant has not demonstrated prejudice in the trial court's exclusion of the statement, as the trial court stated it would not have changed the ruling.

**{¶24}** The first assignment of error is overruled.

II.

**{¶25}** In his second assignment of error, Appellant argues the evidence was insufficient to support his conviction of intimidation of a crime victim or witness. He specifically argues he never threatened to harm or restrain her in any way, and merely encouraged her to change her story and tell police her initial statement was exaggerated.

**{¶26}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶27}** Appellant was convicted of intimidation of a witness in violation of R.C. 2921.04(A), which provides:

(A) No person shall knowingly attempt to intimidate or hinder the victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding, and no person shall knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act.

**{¶28}** Subsection (B) of R.C. 2921.04, which Appellant was not charged with nor convicted of, provides:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

(1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding;

(2) A witness to a criminal or delinquent act by reason of the person being a witness to that act;

(3) An attorney by reason of the attorney's involvement in any criminal or delinquent child action or proceeding.

**{¶29}** The Ohio Supreme Court has distinguished between the type of conduct each subsection of the statute prohibits:

Both R.C. 2921.04(A) and (B) prohibit knowing attempts to intimidate a witness. We cannot hypothesize an instance in which the act of threatening a witness would not also constitute intimidation. The term "threat" represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct. See *Planned Parenthood League of Massachusetts, Inc. v. Blake* (1994), 417 Mass. 467, 474, 631 N.E.2d 985 (defining "threat" as "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"). To "intimidate" means to "make timid or fearful: inspire or affect with fear: frighten * * *; *esp.*: to compel to action or inaction (*as by threats*)." (Emphasis added and capitalization omitted.) Webster's Third New International Dictionary at 1184.

"Intimidation" by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior. We simply do not discern a meaningful difference between intimidation of a witness and the

making of a threat to a witness. Accordingly, both R.C. 2921.04(A) and (B) prohibit the threatening of witnesses.

An *unlawful* threat must accordingly connote more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands. The word "unlawful" in R.C. 2921.04(B) must add substantive meaning, or it is superfluous. Adoption of the state's argument requires us in effect to rewrite R.C. 2921.04(B) by deleting the adjective "unlawful" from the statute. The interpretation of the court of appeals requires us to rewrite the statute by construing the adjective "unlawful" as a modifier of the noun "conduct," a word not even used in the statute. We do not sanction either approach.

We hold, rather, that the statutory language in R.C. 2921.04(B), proscribing intimidation by an "unlawful threat of harm," is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law. For example, where the making of a threat constitutes the offense of coercion, in violation of R.C. 2905.12, a misdemeanor, that offense would serve as a predicate offense for the crime of witness intimidation as proscribed by R.C. 2921.04(B), a felony.

{¶30} *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶¶ 39-42 (2006).

**{¶31}** In *Cress,* the defendant told the victim if she would refrain from getting him in trouble, he would not disseminate pictures of her smoking a bong in the basement. He urged his mother to tell the victim if he had to bring up nude pictures of the victim in his defense, the victim would lose her kids. He also telephoned his brother, asking his brother to talk to the victim about dropping the charges, giving his brother a list of various things he would do if the victim did not drop the charges: (1) show child-protection authorities incriminating photographs of the victim using illicit drugs and/or depicting her nude, (2) provide access to the victim's basement to an appliance-rental company, apparently to recover a washing machine and dryer that were, by implication, in her possession improperly, (3) provide unspecified information to another rental company about her stereo and computer, (4) make her get rid of her pet dog and live-in babysitter because they were not permitted by the terms of her lease, (5) reveal to one of the victim's family members that she was having an affair, and (6) no longer permit her to use his motor vehicle. *Id.* at ¶10.

**{¶32}** The Supreme Court reversed his conviction of violating R.C. 2921.04(B), finding insufficient evidence of an *unlawful* threat. *Id.* at ¶45. The court did state sufficient evidence may have been presented to support a violation of subsection (A); however, the State did not charge Cress with violation of R.C. 2921.04(A), nor was the charge submitted to the jury as a lesser-included offense.

**{¶33}** Appellant's argument in this case focus on the absence of an *unlawful* threat. However, Appellant was charged and convicted of violating R.C. 2921.04(A), which does not require proof of an unlawful threat, but only an attempt to intimidate or hinder the victim or witness. As discussed in *Cress, supra,* intimidation by definition

involves the creation of fear in a victim of negative consequences for the purpose of influencing behavior.   The State presented evidence of the telephone call in which Appellant told the victim if she did not change her story and persisted with the charges against him, she would be alone, would not have his income to help her pay rent, and they would dig themselves into a hole financially.   By stressing the negative consequences which would result if she persisted in the charges against him, he created fear in M.H. for the purpose of influencing her behavior.   We find this is sufficient evidence, if believed by the jury, to support a finding Appellant intimidated the victim in violation of R.C. 2921.04(A).

**{¶34}**  The second assignment of error is overruled.

**{¶35}**  The judgment of the Delaware Municipal Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur