[Cite as *State v. Eck*, 2020-Ohio-3880.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2019-0084 |
| JUSTIN L. ECK | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:          Appeal from the Muskingum County
                                                          Court, Case No. 1900324A


JUDGMENT:                                       Affirmed

DATE OF JUDGMENT ENTRY:         July 27, 2020

APPEARANCES:


For Plaintiff-Appellee                          For Defendant-Appellant

D. MICHAEL HADDOX                       DARREN L MEADE
Prosecuting Attorney                          Parks and Meade, LLC
Muskingum County, Ohio                     2602 Oakstone Drive
                                                          Columbus, Ohio  43231
TAYLOR P. BENNINGTON
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth Street
P.O. Box 189
Zanesville, Ohio 43701

*Hoffman, P.J.*

{¶1} Defendant-appellant Justin L. Eck appeals his convictions and sentence entered by the Muskingum County Court, following a bench trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On May 20, 2019, a Complaint was filed in the Muskingum County Court, charging Appellant with one count of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree; one count of aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree; one count of domestic violence, in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree; and one count of intimidation of a witness, in violation of R.C. 2921.04(A), a misdemeanor of the first degree. The trial court issued a warrant for Appellant's arrest on the same day, and a protection order on May 21, 2019.

{¶3} Appellant appeared before the trial court on May 21, 2019, and entered pleas of not guilty to the charges. Appellant was released on his own recognizance.

{¶4} The matter proceeded to bench trial on August 20, 2019.

{¶5} Loran Brungs testified she and Appellant had been in a relationship "on and off for over a year", beginning in April, 2018. During the first half of the relationship, Brungs had her own residence, but she and Appellant moved in together in October or November, 2018. Sometime around midnight on May 18, 2019, Brungs was asleep when Appellant returned to the residence after an evening of drinking with his friends. Brungs stated Appellant woke her up to unlock the door and an argument ensued. Appellant followed Brungs throughout the house, calling her a "whore" and threatening to knock her teeth down her throat. Brungs called her mother for help during the argument.

{¶6}   Brungs also telephoned her best friend to see if she could help.  While Brungs was on the phone with her friend, Appellant tried to rip her cell phone out of her hands.  Appellant eventually yanked the charging cord out of the wall socket.  Appellant grabbed Brungs and punched her in the mouth with a closed fist.

{¶7}   On cross-examination, defense counsel asked Brungs if she had been drinking with friends that evening.  Brungs explained she had purchased alcohol earlier that day – wine coolers for her friends and beer for Appellant.  After picking up her paycheck, Brungs stopped at her friend's house to see her horses.  Brungs adamantly denied consuming alcohol.

{¶8}   Brungs stated Appellant was intoxicated when he arrived home.  She explained when Appellant drank, he drank heavily and became combative.  When asked if she tried to leave the residence, Brungs testified she attempted to gather her daughter and some belongings, but was unable to do so because Appellant was threatening her the entire time.  Brungs acknowledged Appellant threw some of his belongings into a laundry basket to leave the residence, but indicated he continued to fight with her and "wouldn't leave me alone." Trial Transcript at 32.  Brungs was eventually able to call the sheriff's department.  Appellant left after Brungs made the 9-1-1 call.

{¶9}   Defense counsel questioned Brungs about her injuries.  Brungs stated, while Appellant tried to get her phone, he grabbed her by the wrist and dug his fingernails into her skin, leaving scratch marks.  Brungs added Appellant wrestled her onto the bed and she scraped her leg on the wooden pallets which were used as the bedframe.  Brungs rejected defense counsel's suggestion the injuries to her mouth were caused by her lip piercing.  Brungs denied sending Appellant a Facebook message in which she admitted

he never punched her in the face.  The state objected when defense counsel asked Brungs to read the message.  The trial court sustained the objection, finding the message had not been authenticated.

{¶10}  The trial court directed the bailiff to take possession of Defendant's Exhibit 1, a copy of the Facebook message, noting: "It's clear to the Court that either the witness has committed perjury or somebody is perpetrating a fraud on the Court.  I'm going to do that for a criminal investigation." Tr. at 55.

{¶11}  Muskingum County Sheriff's Deputy Colopy, along with Deputy Prouty, were dispatched to 8615 Chandlerville Road, Chandlerville, Muskingum County, Ohio, at approximately 1:25 a.m. on May 18, 2019, in response to a possible active domestic violence.  When the deputies arrived, they were met outside by Brungs.  Deputy Colopy described Brungs as "extremely distraught", "speaking very quickly and tearing up." Tr. at 64.  Brungs informed the deputies Appellant had left the residence.

{¶12}  Deputy Colopy testified Brungs told him Appellant had returned home around midnight and she went downstairs to unlock the door.  Brungs stated an argument ensued after Appellant found newly purchased alcohol in the refrigerator.  Appellant questioned whether Brungs had gone to work that day and accused her of "whoring around."  Brungs contacted her friend, Ashley, to try to explain to Appellant why there was alcohol in the refrigerator.  Brungs informed the deputies Appellant told her he would knock her teeth down her throat if she contacted law enforcement.  At a point during the struggle over the phone, Brungs was able to call 9-1-1.  When Appellant realized Brungs had made the 9-1-1 call, he struck her in the face.  Deputy Colopy noted Brungs expressed great fear of Appellant and took Appellant's threats seriously.

{¶13} Deputy Colopy photographed Brungs' injuries as well as the scene. The deputy described Brungs' injuries, including a scrape on her left wrist, a small laceration on the inside of her lip, and a scrape on her ankle. The deputy added there was no evidence Brungs had been drinking alcohol or was intoxicated.

{¶14} Kimberly Beckett, Brungs' mother, testified she received a call from Brungs during the early morning hours of May 18, 2019. Beckett stated Brungs was crying and was very scared. While Beckett was speaking with Brungs, she could hear Appellant's voice. Appellant was yelling, cursing, and calling names. Beckett was on the phone with Brungs between 5 and 10 minutes. After hanging up with her daughter, Beckett called the sheriff. Beckett phoned Brungs to make sure her daughter was okay. Beckett again heard Appellant yelling and cursing. Beckett called the sheriff a second time.

{¶15} The state rested its case. Appellant made a Crim. R. 29 motion for acquittal, which the trial court overruled.

{¶16} Appellant testified on his own behalf. Appellant stated he was babysitting Brungs' three children during the day on May 17, 2019, while she was at work. According to Appellant, Brungs texted him between 12 noon and 1 p.m., advising him she was finished working for the day and was going to pick up her paycheck. Appellant did not hear from Brungs until she returned home between 4:30 and 5:00 p.m. Around 6 p.m., Brungs left the residence with her three children to drop off the older two with their father. Appellant left the residence and went to Cambridge to visit friends. Appellant stated he had no more than two beers during the course of the evening.

{¶17} Appellant returned home around midnight. Appellant did not have a key and pounded on the door for 10 minutes until Brungs answered. An argument ensued.

Appellant explained he had purchased beer and some was missing. Brungs told Appellant she and her friends had been drinking. Appellant questioned Brungs about why she would drink and drive as he thought she was at a friend's house.

{¶18} As the two continued to argue, Appellant proceeded upstairs to pack his belongings. He explained he had already planned on leaving prior to returning home that evening. Brungs followed Appellant upstairs. According to Appellant, Brungs began to call some people. She placed them on speakerphone "and they were kind of, like ganging up on me." Tr. at 109. Appellant described the argument as "loud", but added there was no screaming. He denied any threats of violence or actual physical violence. Appellant also denied trying to grab Brungs' cell phone out of her hands. Appellant testified Brungs' claim she did not drink was "incorrect", noting Brungs "liked her whiskey" and "drank quite frequently." Tr. at 123.

{¶19} On cross-examination, Appellant denied being intoxicated on the evening in question. He also denied punching Brungs, explaining she struck herself in the face with her cell phone when she grabbed it out of his hands. Appellant claimed he did not know Brungs called 9-1-1.

{¶20} After hearing the evidence, the trial court took the matter under advisement. The trial court conducted a sentencing hearing on October 21, 2019. At the hearing, the trial court entered a finding of guilty as to Count One (domestic violence), Count Two (aggravated menacing), Count Three (domestic violence), and Count Four (intimidation of a witness). On Count One, the trial court sentenced Appellant to 180 days in jail. The trial court did not impose any jail time on the remaining three counts. The trial court

memorialized Appellant's convictions and sentence in a Sentencing Entry filed October 21, 2019.

{¶21} It is from these convictions and sentence Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED WHEN IT CONVICTED APPELLANT OF ASSAULT [SIC] AS THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BECAUSE TRIAL COUNSEL FAILED TO PROPERLY INQUIRE REGARDING APPELLANT RECEIVING AN EXONERATING FACEBOOK MESSAGE FROM THE PROSECUTING WITNESS.

I

{¶22} In his argument regarding his first assignment of error, Appellant challenges his conviction of intimidation of a witness as against the manifest weight and based upon insufficient evidence.[1]

---

[1] We note the first assignment of error set forth in Appellant's statement of his assignments of error found on page 1 of his Brief challenges his *assault* conviction.  However, in the argument section of his Brief, Appellant challenges his conviction for *intimidation of a witness*. We elect to review the first assignment

**{¶23}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶24}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶25}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

---

of error relative to his conviction for intimidation of a witness as Appellant was neither indicted nor convicted of assault.

**{¶26}** Appellant was convicted of intimidation of a witness, in violation of R.C. 2921.04(A), which provides:

No person shall knowingly attempt to intimidate or hinder the victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding, and no person shall knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act.

**{¶27}** R.C. 2921.04(A) does not require proof of an unlawful threat, but only an attempt to intimidate or hinder the victim or witness. *State v. Price*, 5th Dist. Delaware No. 2019 CA 00019, 2020-Ohio-132, ¶ 33. "'Intimidation' by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *Id*. at ¶ 29, quoting *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39.

**{¶28}** Appellant argues, "The State apparently sought to prove this charge through testimony that Appellant and Brungs wrestled for the phone while she was on the phone with her mother, then a friend, and then thereafter that Brungs was calling 911 just before Appellant left the home." Brief at 8. Appellant contends the state's case failed as "it never presented any evidence that Appellant was actually aware that Brungs was calling 911 when he supposedly committed these acts." *Id*. Appellant notes Brungs was able to call her mother and her friend during the verbal argument. As an alternative reason as to why he sought to wrestle the phone away from Brungs, Appellant suggests he merely wanted

"to exclude other 3rd parties from their domestic argument." *Id.* Appellant concludes, "the mere fact [he] wrestled with Brungs over the phone during a heated domestic dispute, * * * does not permit in and of itself the assumption [he] did so with the specific aim of hindering Brungs' [sic] from contacting the police." *Id.* at 9.

**{¶29}** Upon review of the evidence as set forth in the Statement of the Case and Facts, supra, as well as the testimony and evidence presented at trial, we find Appellant's conviction for intimidation of a witness was not against the manifest weight and was based upon sufficient evidence.

**{¶30}** Brungs testified Appellant threatened her with physical harm if she called the police, and he did, in fact, hit her in the mouth when she managed to call 9-1-1. Brungs testified as follows:

Q: Okay. And did he get physical with you before you tried to call 911?

A: When – yeah. When he was – like when he was trying to take my phone from me because I was sitting on the bed and I was on the phone with my best friend and he kept getting closer and closer to me and kept on fighting with me, and he ripped my cord out of the wall and it ripped out of my phone. And then that's when all – like when he grabbed ahold of me because I was Trying to call 911 because my mom was on the phone with me that night when he was threatening to punch me in the mouth and knock my teeth down my throat.

Q: Okay. Were those threats made before you tried to call 911?

A: Yes.

Q: Okay.  Were you able to make that – place that 911 call though?

A: Yes.

Q: Okay.  And what happened at that time after that?

A: As soon as I hit the – like the talk button, as soon as I got 911, that's when he hit me in the mouth and he took off.

Q: Okay.  How did he hit you in the mouth?

A: I was like hunched down like this holding, like, my phone.  Like I was on the bed crouched down.  And he was over top of me and was trying to rip my phone out of my hands, and when he hit me, he – like I couldn't actually see, like, which hand, like he hit me with but he just – he hit me, like in the mouth.

Q: Okay.  Was it with a closed fist or open hand?

A: Yeah, it was with a closed fist.  I could feel his fist hit my mouth.

**{¶31}** Tr. at 13-14.

**{¶32}** In addition, Deputy Colopy testified, when he arrived at the scene, Brungs immediately told him she and Appellant had been arguing, but the confrontation became physical when she attempted to use her phone.  Brungs stated Appellant threatened to harm her if she contacted the police.  Deputy Colopy described Brungs as extremely distraught, upset, and crying, and recalled she was speaking very quickly.  Deputy Colopy testified as follows:

Q: Did she say – did she tell you what – how he threatened her?

A: She said that he told her if she contacted law enforcement that he would knock her teeth down her throat.

Q: Okay. Did she tell you about any other threats he made that night?

A: Not that I can recall.

Q: Okay.

A: But after – after the threat, I asked her if she did take this as a legit threat and she said yes, and she expressed great fear of him. She immediately tried to get ahold – or he was trying to get ahold of her phone so she rolled over on her stomach on the bed to try to protect herself and the phone. During that point, [Appellant] scratched her left wrist trying to get the phone. She saw an opportunity to kind of lean up, from my perspective on it and she called 911. Shortly after he realized that the 911 phone call was made, she was struck in the face.

**{¶33}** TR. at 69.

**{¶34}** The evidence clearly establishes Appellant attempted to intimidate and hinder Brungs from contacting law enforcement.

**{¶35}** Based upon the foregoing, Appellant's first assignment of error is overruled.

II

**{¶36}** In his second assignment of error, Appellant contends trial counsel was ineffective for failing to properly inquire regarding a Facebook message allegedly sent by Brungs to Appellant which exonerates him.

**{¶37}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶38}** Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute

ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶39}** During the cross-examination of Brungs, defense counsel attempted to introduce Defendant's Exhibit 1, a screenshot of a Facebook message allegedly sent from Brungs to Appellant, in which Brungs admits Appellant did not strike her despite having told police he had done so. Brungs acknowledged her name, imagine, and the general information were hers, but denied sending the message to Appellant. Brungs noted, "I do not send messages the way this is said", and added, "I didn't do this." Tr. at 49. The state objected. The trial court found the message was not authenticated and sustained the state's objection.

**{¶40}** Upon conclusion of defense counsel's cross-examination, the trial court directed the bailiff to take possession of Defendant's Exhibit 1, noting: "It's clear to the Court that either the witness has committed perjury or somebody is perpetrating a fraud on the Court. I'm going to do that for a criminal investigation." Tr. at 55.

**{¶41}** Appellant asserts trial counsel was ineffective for failing to reintroduce Defendant's Exhibit 1 during his direct testimony. Appellant claims, as the recipient of the Facebook message, "[h]e himself could have authenticated the message for admissibility as an exhibit." Brief of Appellant at 11. Appellant notes, pursuant to Evid. R. 901(B)(1), his testimony as a witness with knowledge "that a matter is what it is claimed to be" is an acceptable method of authentication. Appellant submits there was no discernable reason for trial counsel not to attempt to reintroduce the exhibit during Appellant's direct examination.

**{¶42}** Assuming, arguendo, trial counsel's failure to attempt to reintroduce the exhibit during Appellant's direct examination fell below an objective standard of reasonable representation, we find Appellant has not demonstrated had counsel reintroduced the exhibit the trial court would have admitted the evidence given Brungs' denial of its authenticity and the trial court's skepticism regarding the origins of the message.  We find appellant has not demonstrated a reasonable probability of a change in the outcome had counsel reintroduced the exhibit.

**{¶43}**  Appellant's second assignment of error is overruled.

**{¶44}**  The judgment of the Muskingum County Court is affirmed.


By: Hoffman, P.J.
Wise, John, J.  and
Baldwin, J. concur