[Cite as *State v. Calloway*, 2024-Ohio-703.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023 CA 00045 |
| | : | |
| CHARLES F.C. CALLOWAY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
Common Pleas, Case No. 2022 CR
00467

JUDGMENT:        AFFIRMED

DATE OF JUDGMENT ENTRY:        February 26, 2024

APPEARANCES:

For Plaintiff-Appellee:

JENNY WELLS
LICKING COUNTY PROSECUTOR

KENNETH W. OSWALT
20 S. Second St., 4th Floor
Newark, OH 43055

For Defendant-Appellant:

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, OH 43701

*Delaney, J.*

{¶1} Defendant-Appellant Charles F.C. Calloway appeals his April 26, 2023 conviction and sentence by the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The criminal proceedings against Defendant-Appellant Charles F.C. Calloway began at 1:30 a.m. on July 15, 2022, when two sisters worked together to call 911 and report that Calloway and their mother, M.S., were fighting and Calloway shoved their mother. Calloway was their mother's boyfriend and he lived with them. The 13-year-old and 14-year-old testified that Calloway came home angry that night. He went into M.S.'s room and the children could hear them arguing. One child heard something break when it hit the ground. The child heard M.S. say that Calloway hit her, but the child did not witness Calloway hit her mother. Calloway and M.S. came out of their room and continued their argument in the hallway, where the children could see them from their rooms. M.S. started to go down the stairs when the children saw Calloway shove her. M.S. wobbled but did not fall. After that, one child got her phone, dialed 911, and handed it to her sister to speak to 911. In the 911 call, M.S. and Calloway can be heard arguing in the background. Calloway left the home when the child told him the police were on the way.

{¶3} The Newark Police Department was dispatched to the reported address. When they got to the home, they knocked on the door and yelled, "Newark Police" for 30 minutes, but no one answered the door. After 30 minutes, the police officers forced entry into the home. The police officers found M.S. and the two children huddled on the bed in

M.S.'s bedroom. Calloway was not in the home. M.S. and the children did not want to speak with the police officers, but Officer Kristin Peacock was able to speak with M.S. and record the conversation on her cruiser cam video. M.S. told Officer Peacock that there was screaming and yelling when Calloway told M.S. to leave the residence, Calloway got aggressive, and then he left. When asked for more detail, M.S. said there was pushing and shoving, and Calloway pushed her down in the hallway. Officer Peacock testified the hallway was close to the staircase. M.S. did not report any injuries. The officers were concerned that Calloway would return to the home, so they took M.S. and the children to the police department to be picked up by a family member.

{¶4} Calloway was charged with domestic violence pursuant to R.C. 2919.25(A) and he was later arrested on August 8, 2022. He was taken to the Licking County Jail. At the initial bond hearing, Calloway was ordered to have no contact with M.S., the alleged victim.

{¶5} On August 17, 2022, the Licking County Grand Jury indicted Calloway on one count of domestic violence, a fourth-degree felony in violation of R.C. 2919.25(A), in Case No. 22 CR 467. Calloway entered a plea of not guilty and was released on bond that continued the no-contact order between him and M.S., but on September 1, 2022, a capias was issued for his arrest for contacting M.S. and failing to report to probation. Calloway was arrested on October 6, 2022 and taken to the Licking County Jail.

{¶6} On October 20, 2022, the Licking County Grand Jury issued a superseding three-count indictment: (1) domestic violence, a fourth-degree felony in violation of R.C. 2919.25(A); (2) intimidation of a victim or witness in a criminal case, a first-degree misdemeanor in violation of R.C. 2921.04(A); and (3) making false allegations of peace

officer misconduct, a first-degree misdemeanor in violation of R.C. 2921.15(B). Calloway entered a not guilty plea to the charges and the no-contact order remained in place.

{¶7} The State brought the additional two charges against Calloway based on his behavior while in the Licking County Jail. Calloway was charged with Count Three after he alleged that a Licking County Jail officer asked him to sell drugs, which after an investigation proved to be a false statement. The State charged Calloway with Count Two, intimidation of a witness or victim in a criminal case, based on Calloway's continued prohibited contact with M.S.

{¶8} Erik McCourt is the Chief Investigator with the Licking County Prosecutor's Office. He was asked to locate M.S. in order to serve her with a subpoena. During his search for M.S., he reviewed recorded jail calls between M.S. and Calloway. McCourt learned that Calloway was using his jail account, and the jail accounts of other inmates in the Licking County Jail, to make multiple phone calls to M.S. Since the beginning of the case, McCourt stated he observed over 5000 jail recorded phone calls between Calloway and M.S. McCourt estimated that M.S. accepted and spoke with Calloway in about 800 calls. Calloway called M.S. multiple times a day, but M.S. did not always answer. One of the children testified that she knew Calloway was calling her mother and sometimes her mother shut her phone off.

{¶9} McCourt reviewed some of the phone calls between M.S. and Calloway. In one phone call, Calloway tells M.S. not to show up at the grand jury hearing even though she has been subpoenaed. Calloway says that if no one shows up, they have to release him. In another call, Calloway asks M.S. if she is going to the grand jury proceedings. M.S. says no. On August 18, 2022, Calloway calls M.S. and tells her that he was indicted.

He tells her to speak with the prosecutor to drop the charges. On October 10, 2022, Calloway calls M.S. and tells her not to go anywhere because when he goes to trial and they can't produce a witness or a victim, he walks out. On a December 5 call, M.S. confirms she is not going to court and Calloway responds that he's going to have someone get ahold of her to make sure of that.

{¶10} On October 21, 2022, Calloway filed a request for relief from prejudicial joinder of the three charges. He argued that while that the domestic violence led to the additional misdemeanor charge of intimidation, there was no direct connection between the domestic violence charge and the charge of false allegations. Via judgment entry filed December 13, 2022, the trial court granted the motion to sever the misdemeanor counts from the felony counts in the indictment.

{¶11} On December 8, 2022, the Licking County Grand Jury issued a superseding three-count indictment charging Calloway with: (1) domestic violence, a fourth-degree felony in violation of R.C. 2919.25(A); (2) intimidation of a victim or witness in a criminal case, a first-degree misdemeanor in violation of R.C. 2921.04(A); and (3) falsification, a first-degree misdemeanor in violation of R.C. 2921.13.

{¶12} In December 2022, Calloway sent a letter to M.S., via M.S.'s mother. M.S.'s mother had known Calloway for 12 years. A portion of the letter read:

Your really starting to piss me off, fr, by ignoring me for no fuckin reason. But it's ok I'll see you when they release me on 12-14-22 and see if your gonna ignore me then. You wont be able to cuz I will be right in your face in the flesh. Im coming right to your mom house when I get out of here and walkin right in the garage cuz you got me fucked up! and who ever that other

nigga is that dead too all the way, you think I'm gonna let you go yeah not gonna happen [M.S.]. This is suppose to be a kind letter but you just get under my skin by doing dumb ass shit. * * *

(T. 73, State's Exhibit 5). At the time of the letter, M.S. was dating another person.

{¶13} On December 29, 2022, the Licking County Grand Jury indicted Calloway in Case No. 22 CR 837 for intimidation of a witness or victim, a third-degree felony in violation of R.C. 2921.04. The trial court ordered that Case No. 22 CR 837 be consolidated with Case No. 22 CR 467. The charge in Case No. 22 CR 837 was to be considered Count Two.

{¶14} The matter was set for a jury trial, but on January 30, 2023, the jury trial was cancelled and set for a bench trial. On March 6, 2023, the matter proceeded to a bench trial on only the felony domestic violence charge and the felony intimidation charge. M.S. did not appear at trial. At the conclusion of the State's case, Calloway moved for an acquittal under Crim.R. 29 on both charges. The trial court granted the Crim.R. 29 motion as to the domestic violence charge and denied the motion as to the intimidation charge. The defense rested without testimony from Calloway.

{¶15} The trial court found Calloway guilty of the felony intimidation count that was originally set out in Case No. 22 CR 837 and transferred to Case No. 22 CR 467. The trial court deferred sentencing to complete a presentence investigation report.

{¶16} On April 26, 2023, Calloway entered pleas of guilty to the two misdemeanor charges. Via sentencing entry filed on April 26, 2023, the trial court sentenced Calloway to thirty-six months on the felony intimidation charge and six months on the misdemeanor charges, to run concurrently for a total of three years in prison.

{¶17} It is from this judgment that Calloway now appeals.

## ASSIGNMENTS OF ERROR

{¶18} Calloway raises two Assignments of Error:

I. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF INTIMIDATION UNDER R.C. 2921.04(B), A FELONY OF THE THIRD DEGREE, AS SUCH FINDING WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S SENTENCE WAS CONTRARY TO LAW, AS IT WAS IMPOSED WITHOUT ADEQUATELY CONSIDERING THE PURPOSES OF FELONY SENTENCING UNDER OHIO REVISED CODE SECTION 2929.11 OR THE SERIOUSNESS OF CRIME AND RECIDIVISM FACTORS UNDER OHIO REVISED CODE SECTION 2929.12.

## ANALYSIS

## I.

{¶19} In his first Assignment of Error, Calloway argues his conviction for a violation of R.C. 2921.04(B) was against the sufficiency and manifest weight of the evidence. We disagree.

{¶20} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme

Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶21} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶22} Calloway was found guilty of intimidation of an attorney, victim, or witness in a criminal case, a third-degree felony in violation of R.C. 2921.04(B). The statute reads in pertinent part:

* * *

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

(1) The victim of a crime or delinquent act in the filing or prosecution of

criminal charges or a delinquent child action or proceeding;

(2) A witness to a criminal or delinquent act by reason of the person being

a witness to that act;

* * *

(D) Whoever violates this section is guilty of intimidation of an attorney,

victim, or witness in a criminal case. A violation of division (A) of this section

is a misdemeanor of the first degree. A violation of division (B) of this section

is a felony of the third degree.

{¶23} Calloway argues on appeal that the State failed to establish the element of "unlawful threat of harm" as required by R.C. 2921.04(B). This Court has previously analyzed the meaning of "unlawful threat of harm" in *State v. Price*, 5th Dist. Delaware No. 2019 CA 00019, 2020-Ohio-132. In *Price*, the defendant was convicted of intimidation of a witness in violation of R.C. 2921.04(A), which provides:

(A) No person shall knowingly attempt to intimidate or hinder the victim of a

crime or delinquent act in the filing or prosecution of criminal charges or a

delinquent child action or proceeding, and no person shall knowingly

attempt to intimidate a witness to a criminal or delinquent act by reason of

the person being a witness to that act.

The defendant contended on appeal that the evidence was insufficient to show that he threatened to harm or restrain the victim in the case. In determining whether the verdict was supported by the sufficiency of the evidence, we reviewed the differences between

the prohibited type of conduct in each subsection of the statute, as explained by the Ohio

Supreme Court:

> Both R.C. 2921.04(A) and (B) prohibit knowing attempts to intimidate a
> witness. We cannot hypothesize an instance in which the act of threatening
> a witness would not also constitute intimidation. The term "threat"
> represents a range of statements or conduct intended to impart a feeling of
> apprehension in the victim, whether of bodily harm, property destruction, or
> lawful harm, such as exposing the victim's own misconduct. *See Planned*
> *Parenthood League of Massachusetts, Inc. v. Blake* (1994), 417 Mass. 467,
> 474, 631 N.E.2d 985 (defining "threat" as "the intentional exertion of
> pressure to make another fearful or apprehensive of injury or harm"). To
> "intimidate" means to "make timid or fearful: inspire or affect with fear:
> frighten * * *; *esp*.: to compel to action or inaction (*as by threats*)." (Emphasis
> added and capitalization omitted.) Webster's Third New International
> Dictionary at 1184.
>
> "Intimidation" by definition involves the creation of fear in a victim, and the
> very nature of a threat is the creation of fear of negative consequences for
> the purpose of influencing behavior. We simply do not discern a meaningful
> difference between intimidation of a witness and the making of a threat to a
> witness. Accordingly, both R.C. 2921.04(A) and (B) prohibit the threatening
> of witnesses.
>
> An *unlawful* threat must accordingly connote more than just a threat, i.e.,
> more than just a communication to a person that particular negative

consequences will follow should the person not act as the communicator demands. The word "unlawful" in R.C. 2921.04(B) must add substantive meaning, or it is superfluous. Adoption of the state's argument requires us in effect to rewrite R.C. 2921.04(B) by deleting the adjective "unlawful" from the statute. The interpretation of the court of appeals requires us to rewrite the statute by construing the adjective "unlawful" as a modifier of the noun "conduct," a word not even used in the statute. We do not sanction either approach.

We hold, rather, that the statutory language in R.C. 2921.04(B), proscribing intimidation by an "unlawful threat of harm," is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law. For example, where the making of a threat constitutes the offense of coercion, in violation of R.C. 2905.12, a misdemeanor, that offense would serve as a predicate offense for the crime of witness intimidation as proscribed by R.C. 2921.04(B), a felony.

*State v. Price,* 2020-Ohio-132, ¶ 29 quoting *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶¶ 39-42. The Court held that the threat itself, not the threatened conduct, must be unlawful. *Id.* at ¶ 38, 858 N.E.2d 341. *State v. Yambrisak*, 5th Dist. Richland No. 2012CA50, 2013-Ohio-1406, ¶ 31.

{¶24} Calloway argues the letter he sent to M.S. in December 2022 did not contain an unlawful threat of harm. In support of his argument, he refers this Court to the Urban Dictionary to explain that Calloway's meaning of "whoever that other nigga is that dead too all the way" was not a threat to the life of M.S.'s new boyfriend but slang that means,

"not happening." Calloway chose not to testify at trial and before the defense rested, Calloway asked the trial court to take judicial notice of Defense Exhibit A, which was the definition from the Urban Dictionary of "that's dead." (T. 83). The State objected to the admission of the exhibit and the trial court sustained the objection. The evidence was proffered for the record. (T. 85). Calloway does not argue on appeal that the trial court erred in sustaining the State's objection to taking judicial notice of his exhibit.

{¶25} M.S.'s mother testified as to the letter Calloway sent to M.S. M.S.'s mother had known Calloway for 12 years while he was in a relationship with her daughter. Defense counsel asked M.S.'s mother if "that dead too" sounded like slang to her. M.S.'s mother testified that it did and that was how Calloway talked. However, when asked whether she read that as a threat, M.S.'s mother testified, "Yes. 'Cause I'm used to Charley coming up in my house. He's not – to me, he's not violent in my house, but his words are." (T. 76).

{¶26} The trial court announced its verdict finding Calloway guilty of a violation of R.C. 2921.04(B):

> Well, I read the letter referring to the release on December 12, which is after
>
> she doesn't appear at the trial, and there's no victim testimony there. And
>
> as I read the statute, it doesn't – the threat doesn't have to be against her.
>
> It can be against anyone, so the threat is, obviously against the other guy
>
> here, and that would seem to me sufficient to constitute the elements set
>
> out in the statute.

(T. 90).

{¶27} In a bench trial, a trial judge is "presumed to have considered only the competent and material evidence." *In re Z.G.A.A.*, 5th Dist. Coshocton No. 2023CA0028, 2024-Ohio-326, 2024 WL 370082, ¶ 71 quoting *State v. Davis*, 10th Dist. Franklin No. 17AP-438, 2018-Ohio-58, ¶ 32, citing *State v. Sanders*, 92 Ohio St.3d 245, 267, 750 N.E.2d 90 (2001). The State presented evidence of the 5000 phone calls Calloway made to M.S., telling her to not appear at the grand jury, to evade a subpoena, and not testify. The Chief Investigator testified that he was never able to locate M.S. (T. 52). Calloway eventually sent M.S. a letter stating that she was pissing him off by ignoring him and after he was released on December 14, 2022, he was going to be right in her face and she could not ignore him then. Calloway wrote that whoever M.S.'s new boyfriend was, he was "dead too all the way, you think im gonna let you go yeah not gonna happen [M.S.]." M.S.'s mother, who knew Calloway for 12 years, understood the letter to be a threat.

{¶28} We find the trial court's verdict of an unlawful threat of harm in violation of R.C. 2921.04(B) was supported by the sufficiency of the evidence and not against the manifest weight of the evidence.

{¶29} Calloway's first Assignment of Error is overruled.

**II.**

{¶30} In his second Assignment of Error, Calloway contends his sentence was contrary to law. We disagree.

{¶31} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, 2015 WL 5722820, ¶ 31. Subsection (G)(2) sets forth this court's standard of review:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶32} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range.' " *State v. Padilla*, 5th Dist. Tuscarawas No. 2022

AP 08 0023, 2023-Ohio-1995, 2023 WL 4044122, ¶ 13, quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, 2019 WL 5106376, ¶ 36.

{¶33} As stated by the Supreme Court of Ohio, R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

{¶34} The Supreme Court of Ohio recently clarified the *Jones* opinion as follows:

The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34, quoting

*Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*State v. Taylor*, 5th Dist. Richland No. 2022 CA 0007, 2023-Ohio-4160, 2023 WL 7990394, ¶¶ 82-85 citing *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22.

{¶35} Calloway concedes his sentence is within the statutory range for the offense. He argues the record is devoid of evidence that the trial court considered the purposes of felony sentencing or the seriousness of crime and recidivism factors as required.

{¶36} Calloway was convicted on March 6, 2023 and the sentencing hearing was held on April 26, 2023 to allow time for a presentence investigation. The trial court stated that it had reviewed the presentence investigation report prior to sentencing. (T. 19). Counsel for Calloway spoke on Calloway's behalf, expressing his remorse for his actions. At the time of the offense, Calloway was not under any type of supervision and had no juvenile record. His criminal history began with his relationship with M.S. and counsel described Calloway's relationship with M.S. as toxic and an addiction. (T. 20). The trial court then heard Calloway speak on his own behalf. (T. 21). The State agreed the relationship between M.S. and Calloway was volatile and did not believe that Calloway would comply with orders given to him by the court based on the relationship history, ultimately agreeing with the sentencing recommendation by the Adult Court Services for

30 months in prison. (T. 23). The trial court stated it had considered the purposes and principles of sentencing set out under R.C. 2929.11 as well as the seriousness and recidivism factors set out under R.C. 2929.12. (T. 24). It then stated,

> And it's your prior record that's the problem here and your continued infatuation or fixation on [M.S.] here from your menacing charge over ten years ago, violation of protection order, another violation of protection order, abduction, violation of protection order, escape, violation of protection order, assault. It's – those are very scary charges. On that basis, Mr. Calloway, I'll impose a term of three years in the state penitentiary * * *.

(T. 24-25).

{¶37} We find that based on this record, the trial court complied with the felony sentencing statutes and the sentence was not contrary to law.

{¶38} Calloway's second Assignment of Error is overruled.

## CONCLUSION

{¶39} The judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.